08 CIV 6738

Judge Berman

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

ANGEL AGUASVIVA,

                    Plaintiff.

   -against-.

THE CITY OF NEW YORK; THE NEW YORK
CITY POLICE DEPARTMENT; RAYMOND
KELLY, Commissioner of the New York City
Police Department; NEW YORK CITY DETECTIVE
EARL WILLIAMS and NEW YORK CITY
POLICE OFFICERS JOHN DOE #1 and
JOHN DOE #2,

                    Defendants.

------------------------------------------------------x

Case No.:

**PLAINTIFF'S COMPLAINT
FOR DAMAGES RESULTING**

**JURY TRIAL DEMANDED**



## COMPLAINT

Plaintiff, **ANGEL AGUASVIVA,** individually, by his undersigned attorney, hereby alleges and states, upon knowledge as to his own conduct and otherwise upon information and belief, for his complaint, as follows:

### NATURE OF THIS ACTION

This action arises out of the Plaintiff's incident with the New York City Police Department, a branch of the Government of the State of New York and the City of New York, in connection with a violation of his Civil Rights under the United States Constitution, as a result of his imprisonment against his will, with no reason given. Bivens v. Six Unknown Named Agents Of Federal Bureau Of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619. As set forth below, the police, acting upon a warrant that may or may not have been valid, entered into the Plaintiff's place of residence in an effort to locate items of contraband. Upon discovering none, the police then went to the Plaintiff's place of business, forcibly removed him from said place of business against his will, placed him into custody by virtue of physically placing him into a

vehicle operated by the New York City Police Department, and without formally placing him under arrest or reading him his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966), kept him imprisoned in said vehicle for two hours, with no explanation given. Plaintiff was then released, with no additional explanation given. He returned home to find his apartment ransacked, his possessions destroyed, and monies in an amount of approximately Thirty Thousand Dollars ($30,000.00) that was in his apartment taken by the police. This money was never vouchered and to date never returned. With his apartment in shambles, his possessions destroyed or taken outright and his psyche damaged, plaintiff has suffered an egregious violation of his Civil Rights.

In the last few years alone, the New York City Police Department has stopped and questioned New Yorkers nearly one million times, part of a dramatic increase in the Department's use of stop-and-frisk tactics since 2002. Nearly 90 percent of the people stopped during the last two years were engaged in totally lawful activity and were not so much as issued a summons. Minorities and their community members bear the brunt of this egregious police behavior, with African Americans and Latinos accounting for nearly 90 percent of those stops where no summons was issued.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Angel Aguasviva, is a United States resident who currently resides in New York State, in the County of Bronx, at 1244 Virginia Avenue. At all times pertinent, Plaintiff resided in New York State and within the jurisdictional boundaries of this court.
2. Defendant, the City of New York, who was the supervisory governmental entity of the New York City Police Department, is a municipal corporation acting by and through the State of New York, and is brought by and through the Office of the General Counsel, in the name of said City of New York, accordingly.
3. Defendant New York City Police Department, is a municipal agency acting by and through the Government of the City of New York, and through the Office of the General Counsel, in the name of said City of New York, accordingly.
4. Defendant, Raymond Kelly, is the Commissioner of the New York City Police Department, which is an agency acting by and through the City of New York, with its

headquarters at One Police Plaza, New York County. He is sued in his official capacity only.

5   Defendant Detective Earl Williams, is a detective bearing shield # 4616, is a police officer employed by the New York City Police Department, which is an agency acting by and through the City of New York, and is a detective who signed off on the warrant authorizing the search of the apartment in question at 1939 Grand Concourse, Bronx New York. He is sued in his official capacity only.

6   Defendant Police Officer John Doe #1, is a police officer employed by the New York City Police Department, which is an agency acting by and through the City of New York, and is a police officer who unlawfully detained the Plaintiff. His identity, shield #, and precinct is unknown at present time, as at no time did said officer identify himself to the Plaintiff. He is sued in his official and personal capacities.

7   Defendant Police Officer John Doe #2, is a police officer employed by the New York City Police Department, which is an agency acting by and through the City of New York, and is a police officer who unlawfully detained the Plaintiff. His identity, shield #, and precinct is unknown at present time, as at no time did said officer identify himself to the Plaintiff. He is sued in his official and personal capacities.

8   This Court has jurisdiction over the subject matter of the claim contained herein pursuant to 28 U.S.C. §1331, and §1343(3-4), as the claim is involving a United States Constitutional question and or a federal law, making this a federal question case.

9   Furthermore, this Court has supplemental jurisdiction over all state Constitutional and state law claims pursuant to 28 U.S.C. §1367(a).

10   Venue of this suit lies in the United States District Court, Southern District of New York, pursuant to 28 U.S.C. §1391 (b) as the events giving rise to the claim alleged herein occurred within the Southern District of New York, as more specifically described below. Furthermore, both the Plaintiff and Defendants reside within the boundaries of this Court District.

11   Jurisdiction to grant a declaratory judgment is conferred by 28 U.S.C. §§ 2201, 2202.

## FACTS OF THE CASE AND CLAIM FOR RELIEF

12   On or about February 3, 2007, Plaintiff Angel Aguasviva (heretofore known as "Aguasviva") moved in and occupied apartment # 2I ('two-eye') at the premises located at 1939 Grand Concourse, Bronx New York 10453 (heretofore known as the "Premises"). Said apartment was a three bedroom unit.

13   Said apartment was leased to Orginia Severino (heretofore known as "Severino"), and was leased by a landlord known as Building Management Company, Inc., with a post office address of PO Box 679, Newark, New Jersey 07101-0679. Rental checks for this apartment were made payable to Building Management Company, Inc. Rental on the apartment was about Eight Hundred Dollars ($ 800.00).

14   In addition to Aguasviva, also occupying the apartment at the time of the incident further described herein, was Anny Aguasviva Gonzalez, Mr. Aguasviva's twenty-one year old daughter, John Aguasviva, Mr. Aguasviva's eighteen year old son, and Leticia Lesamma, an adult female friend of Mr. Aguasviva.

15   On or about April 12, 2007, at approximately 2:30 p.m., police officers from an as of yet unknown and unidentified precinct, entered the premises in possession of a search warrant that they were executing. The search warrant stated, in relevant part that there is cause to believe that certain property may be present and found in apartment 2I, on the first floor, in premises 1939 Grand Concourse Bronx New York:

- heroin, vials, caps, glassine enveloped, small Ziploc-style bags and other evidence of the possession and distribution of heroin, including but not limited to paraphernalia used to process and distribute drugs, including but not limited to dilatants and scales, counter-surveillance equipment, and records and documents reflecting drug transactions;
- currency and other evidence of proceeds from drug trafficking, including but not limited to financial records in any format, tending to demonstrate cash transactions or financial transfers derived from the possession of cash currency, money orders, bank receipts, stocks, bonds, bills and receipts for goods and services, documents related to real estate holdings, and any title or registration to motor vehicles;

- evidence and ownership and use of the target premises, or the use of property located therein by any person, including but not limited to keys, telephone bills, utility bills, bank statements, leases, deeds, or rent receipts related to the target premises or other real property, mail addressed to or from the target premises, identification bearing the name or photograph of any person, telephone books, address books, date books, calendars, personal papers and videotapes and photographs of persons.

16   All of the above was believed to be evidence of the commission of a narcotics crime at the premises, and of the persons named in the warrant as "J.D. Shorty" (described as a male Hispanic, approximately five feet six inches tall and 130 pounds), and "J.D. Twin", (described as a male Hispanic, approximately five feet five inches tall and 160 pounds) if present at the apartment. The warrant does not mention Mr. Aguasviva or any of his relatives by name or likeness, and the description of the two people does not match the description of his son, daughter or female friend.

17   At the time of the arrival of the police, no one was home. The police proceeded to break the door down to the apartment, and further proceeded to ransack, tear up and destroy the contents of the entire apartment during their rummaging search, leaving said apartment in an unlivable condition.

18   Approximately Five Thousand Dollars ($5,000.00) in cash was on the premises. The police took said money from the premises without issuing a voucher for said money.

19   The police also discovered a container of white powder that they confiscated for testing, believing it to be drugs. Testing established that the white powder was boric acid, an over the counter product that is frequently used as roach poison.

20   No other items of criminality were found on the premises. No drugs, guns or any illegal items were found in the apartment. No records of drug use or sales; only money from Aguasviva's legal business was recovered and taken by the police, with no voucher left behind.

21   The police also confiscated Mr. Aguasviva's driver's license and some documents that referenced his place of business, located at 1244 Virginia Avenue, in the County of Bronx, in the State of New York. They proceeded to locate him there.

22  Upon finding Mr. Aguasviva at his job, the two as yet unnamed police grabbed him, handcuffed him behind his back and threw him into a squad car, claiming that he was under arrest. They did not read him any of his Miranda Rights, nor did they tell him what he was under arrest for, or issue him a summons to appear in Court.

23  The police proceeded to ask Mr. Aguasviva questions. Mr. Aguasviva, who by this time was frightened out of his mind and feared for his life, answered all questions honestly and accurately. He still had no idea why he was handcuffed and in the custody of these two officers, who would not give their name or shield number to him. Instead, they told him that he was going to go to jail for life along with his family

24  The police proceeded to drive him around for almost two hours, at times without saying a word to him. They never took him to a police precinct, un-cuffed him or took his fingerprints or photographed. He was never read any of his rights or told what he had allegedly done. Aguasviva was eventually driven back to his premises and released from custody. Upon returning to the premises, Aguasviva secured a jack to open the door to the apartment because it was so mangled, whereupon he witnessed the condition of his apartment, which for all intents and purposes, was unlivable. He also noticed that approximately Five Thousand Dollars ($5,000.00) in cash money, which was his operating business capital that he had in his apartment, was gone.

## ALLEGATIONS

25  Since his unlawful detention at the hands of the New York City Police Department, Mr. Aguasviva required psycho therapy for nightmares and sleeplessness. To this date, he continues to have nightmares about the incident. He gets physically sick and his heart races anytime he sees a police car, police officer, or hears a police, fire or ambulance siren. He has bouts of anxiety and apprehension every time he enters any vehicle. He has been to several doctors in an effort to alleviate some of the symptoms of his condition. He has now been diagnosed with high blood pressure, a condition he never suffered prior to this incident. In addition. Mr. Aguasviva was unable to remain at the premises, not only because of the damage done by the police, but also because he was fearful that the

police would return. He had to move out shortly after the incident and now resides in a small apartment that is part of a shop on Haviland Avenue, with his two kids.

26   As a direct consequence at the hands of the New York City Police Department and its agents, these New York City Police Officers outlined above, Mr. Aguasviva has suffered a violation of his Civil Rights under the United States Constitution.

27   The Fourth Amendment to the United States Constitution guarantees to citizens of the United States the absolute right to be free from unreasonable searches and seizures carried out by virtue of federal authority. Miranda v. Arizona, 384 U.S. 436 (1966). The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. U.S. Const. amend. IV.

28   Violation of the Fourth Amendment's command against unreasonable searches and seizures, by a federal agent acting under color of federal authority, gives rise to a federal cause of action against the agent for money damages consequent upon the agent's unconstitutional conduct. See Bivens v. Six Unknown Named Agents Of Federal Bureau Of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619.

29   Where federally protected rights have been invaded, the courts will be alert to adjust their remedies so as to grant the necessary relief. Id.

30   In Bivens as here, the matter had its origin in an arrest and search carried out on the morning of November 26, 1965. Bivens claimed that on that day that agents of the Federal Bureau of Narcotics acting under claim of federal authority, entered his apartment and arrested him for alleged narcotics violations. The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.

31   In the case at bar, the violations suffered by Mr. Aguasviva's Constitutional Rights were more prevalent. Mr. Aguasviva was not at home at the time his apartment was searched pursuant to a warrant that was vague and overbroad. In addition, upon trashing the apartment from stem to stern and finding no evidence whatsoever of criminality, the officers, action under claim of federal authority, acted outside of the scope of the warrant and proceeded to accost Mr. Aguasviva at his place of employment, unlawfully detain

him against his will, and use tactics of intimidation and fear in an effort to elicit some sort of confession. Furthermore, while in Bivens the petitioner was detained, albeit unlawfully, Mr. Aguasviva was not even afforded that result. Rather, he was held under duress for two hours in a police cruiser, while the police aimlessly drove him around. He was never taken to a police precinct to be arrested, booked, fingerprinted and put into the system. He was not allowed the right to contact anyone, be it a family member or attorney. He was treated in a cruel and degrading manner, not even allowed the common necessities of life, such as water, a bathroom or any kind of contact with an outside world. Such cruel and inhuman treatment has left Mr. Aguasviva physically shaken and mentally scarred for the rest of his natural life, resulting in recurring nightmares and an incurable untreatable phobia of the New York City Police Department. While no actual monetary amount can make him whole again, Bivens and its progeny allow Mr. Aguasviva to pursue a federal claim as recourse for the trauma he suffered.

32. The constitutional right of people not suspected of any wrongdoing to be free from police searches and intrusions upon their personal liberty is one of the most fundamental protections that our society enjoys. While concerns about crime and criminality, given the time and circumstance our country currently finds itself in, namely being subject to attack from both home and abroad, and given the constant pressure to take proactive measures in order to strive to further reduce the already plummeting crime rates in the major cities, including most prominently, New York, can justify newer aggressive police tactics, what cannot be justified is subjecting millions of people to suspicionless searches and detentions. These wanton actions will not aid in the reduction of criminal activity or the proactive defense against both foreign and domestic terrorism. Rather, they will only continue to alienate the communities and the public at large from the law enforcement agencies who publicly preach unity, community and harmonious relationships with the communities they serve.

33. In conjunction with the violation of the Plaintiff's Federal Civil Rights and the violation of his rights under the Fourth and Fourteenth Amendments of the United States Constitution and Title 42, U.S.C. § 1983, the Defendants' actions violated Plaintiff's rights under Sections 6 and 12 of Article 1 of the New York State Constitution, as well as the common law of the State of New York to be free from false imprisonment.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff demands the following relief:

34   Trial by jury on any issues so trialable;

35   A monetary judgment in the amount of Five Thousand Dollars ($5,000.00) for the amount of money confiscated from the Premises by the New York City Police Department;

36   A monetary judgment in the amount of Seventy Five Thousand Dollars ($75,000.00) for the damage done to the Plaintiffs possessions including, but not limited to: the furniture, cabinets, rugs, floors, tiles, marble, electronic equipment, and any and all possessions of the Plaintiff not listed but on the Premises that were damaged, broken, or destroyed by the actions of the New York Police Department pursuant to their search warrant;

37   A judicial determination of the facial sufficiency of the Search Warrant, pursuant to the Fourth Amendment of the Constitution of the United States of America;

38   Punitive Damages in the amount of Ten Million Dollars ($10,000,000.00) as provided for by statute;

39   Together with such other and further relief as is available under the laws of the United States and which to the Court may deem just and proper.

## JURY DEMAND

40    Plaintiff Aguasviva, as mentioned above, demands a trial by jury as to all issues triable by a jury.

DATED: Bronx, New York
         May 28, 2008

 

*/s/ Nicolás Vélez*
_____
**NICOLÁS VÉLEZ, ESQ. (NV7400)**
Attorney for Plaintiff
**ANGEL AQUASVIVA**
2010 Williamsbridge Road
Bronx, New York 10461
Tel.  718-518-7380
Fax.  718-518-7374